THERIOT, J.
*57 The defendant, Tyrone Folse, was charged by bill of information in district court docket number 712011 with residential contractor fraud when the misappropriation or intentional taking amounts to a value of one thousand five hundred dollars or more, a violation of La. R.S. 14:202.1(C)(3) (prior to amendment by 2017 La. Acts, No. 281, § 1).[1] ,[2] He pled not guilty and, after a trial by jury, was found guilty as charged. The trial court denied the defendant's motion for post-verdict judgment of acquittal and motion for new trial. The defendant was sentenced to five years imprisonment at hard labor and ordered to pay eight thousand dollars of restitution within six months of his release, or in default thereof, to serve an additional two years imprisonment at hard labor. The trial court further ordered that the sentence be served consecutive to any other sentence. The defendant now appeals, assigning error to the trial court's denial of a challenge for cause to strike a juror, the admission of his pretrial statement, statements by the prosecution at trial, the constitutionality and legality of the sentence, and the sufficiency of the evidence. For the following reasons, we affirm the conviction and sentence.
STATEMENT OF FACTS
On December 10, 2014, Larry Gale Wells, the victim herein, entered into a contract with the defendant to build a fence around his home located at 104 Linest Drive in Houma. Under the agreement, the defendant agreed to install approximately 250 feet of fencing for a total contract price of $10,000.00. Two days later, Wells provided the defendant with a check for a down payment of $8,000.00, and the check was cashed on that same day. The residence was still under construction at the time. The contract was later amended by mutual agreement to reduce the size of the fence by 35 feet, and to reduce the total contract price to $9,000.00. As the residence was still under construction when the contract was executed, Wells contacted the defendant by phone in late February of 2015 to inform him that he could commence the work at that time. After additional phone contact by Wells, the defendant began the work in late March, after Wells had moved into the residence.
Specifically, the defendant installed a twelve-foot fence around the patio (a puppy fence) and began forming the footer or concrete chain wall for the main fence.
*58 Wells indicated that the portion of the work described was done prior to mid-July of 2015 and that the defendant did not perform any additional work. He confirmed that the defendant did not complete the work under the contract. Wells ultimately hired someone else to complete the fence and was never reimbursed by the defendant for any portion of his $8,000.00 down payment.
ASSIGNMENTS OF ERROR
The defendant cites seven assignments of error:
1. The trial court erred in failing to strike Juror Shanida Kanach for cause since Ms. Kanach admitted to being unable to fully read and understand the English language.
2. The trial court erred in allowing the defendant's statement to be introduced over the objection of defense counsel since the state failed to read the defendant his Miranda[3] rights prior to taking his statement.[4]
3. The trial court erred in failing to strike prejudicial statements made by the prosecution and failed to give an order for the jury to disregard the same.
4. The trial court's sentence of five (5) years on each count to be served consecutively is grossly disproportionate, excessive, cruel, and unusual.
5. The trial court erred in failing to grant the defendant's motion for a new trial since the evidence was not sufficient to uphold a conviction. The state failed to prove each and every element of the offense charged.
6. The trial court erred in denying the defendant's motion for reconsideration of sentence to cure an excessive and illegal sentence.
7. The trial court erred in denying the defendant's motion for reconsideration of sentence to cure an excessive and illegal sentence.
SUFFICIENCY OF THE EVIDENCE
In assignment of error number five, the defendant argues that evidence was not sufficient to uphold the conviction. Thus, he asserts in assignment of error number five that the trial court should have granted his motion for new trial. As to each of the three cases, the defendant argues that the State failed to prove the element of "greater than $1,500.00" as well as whether no work was done after receiving payment. He argues that the State's assertion at trial that any forty-five day period of no work was sufficient to constitute a violation of La. R.S. 14:202.1 is a misreading of the statute. In that regard, he argues that the statute is clear and unambiguous in that the legislative intent is to charge a defendant if zero work is done on the contract. He concludes that as to each contract, a lot of work was done on each parcel of property that he entered into a contract to make improvements thereto.[5]
As to the instant offense involving the contract with Larry Wells, the defendant claims that Wells paid him $8,000.00 as a down payment on a $10,000.00 contract. He claims that the material was to take *59 six to eight weeks to come in before the work was to start. He further claims that some of the work was completed, including a chain wall and a puppy fence. However, he argues that no indication was given at trial as to how much work was done. The defendant claims that it is impossible to factually determine the value of the work that was completed along with the value of the work that remained incomplete. The defendant further claims that there was testimony by the police and the defendant to show that an employee of the defendant took the funds that were supposed to be used to order the materials for work and that he did not notice this occurrence for several weeks. He argues that element of the offense regarding forty-five days without any work being performed would have long lapsed had he reordered materials, which he claims would have taken a minimum of six to eight weeks to arrive. Accordingly, he adds the claim that this circumstance was completely out of his control. He further argues that based on the testimony presented at trial regarding the Wells case, it may be conceivable that La. R.S. 14:202.1 is inapplicable to this case, again claiming that the work was in progress as the materials were not yet available, and that a significant portion of the work under the contract had been completed.[6]
When issues are raised on appeal contesting the sufficiency of the evidence and alleging one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to a retrial under Hudson v. Louisiana , 450 U.S. 40, 43, 101 S.Ct. 970, 972, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proven beyond a reasonable doubt. When the entirety of the evidence is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion of trial error issues as to that crime would be pure dicta since those issues are moot. However, when the entirety of the evidence is sufficient to support the conviction, the accused is not entitled to a retrial, and the reviewing court must then consider the other assignments of error to determine whether the accused is entitled to a new trial. If the reviewing court determines that there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused will be granted a new trial, but is not entitled to an acquittal. See State v. Hearold , 603 So.2d 731, 734 (La. 1992).
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV ; La. Const. art. I, § 2. The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia , requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find *60 the essential elements of the crime beyond a reasonable doubt. See La. Code Crim. P. art. 821(B) ; State v. Ordodi , 2006-0207 (La. 11/29/06), 946 So.2d 654, 660. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove," every reasonable hypothesis of innocence is excluded. La. R.S. 15:438 ; State v. Wright , 98-0601 (La. App. 1st Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157 & 2000-0895 (La. 11/17/00), 773 So.2d 732.
Pursuant to La. R.S. 14:202.1(A) (as in effect at the time of the offense), in pertinent part, residential contractor fraud is the misappropriation or intentional taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations by a person who has contracted to perform any home improvement or residential construction. Under the pertinent part of the statute, a misappropriation or intentional taking may be inferred when a person "[f]ails to perform any work during a forty-five-day period of time or longer after receiving payment, unless a longer period is specified in the contract." La. R.S. 14:202.1(A)(1). In this case, the State was additionally required to prove that the misappropriation or intentional taking amounted to a value of one thousand five hundred dollars or more. La. R.S. 14:202.1(C)(3). The cost of repairing work fraudulently performed by the contractor and the cost of completing work for which the contractor was paid but did not complete shall be included in determining the amount of the misappropriation or intentional taking. La. R.S. 14:202.1(C)(4).
In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Higgins , 2003-1980 (La. 4/1/05), 898 So.2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). Further, the testimony of the victim alone is sufficient to prove the elements of the offense. State v. Dickerson , 2016-1336 (La. App. 1st Cir. 4/12/17), 218 So.3d 633, 640.
Pertinent to the instant case, the State introduced a compact disc containing photographs taken at 104 Linest Drive, a copy of the TNT Fencing proposal, a check payable to the defendant, and several pages of text messages.
Regarding any possible restrictions on the defendant's ability to complete the job, Wells noted that there were some occasions of bad weather (prior to July), but added that the entire job could have been completed in less than a week. He further stated that the defendant indicated that the job would be completed in one week. He confirmed that fencing materials were never delivered to his residence. Wells noted that he contacted the defendant by phone at one point to inform him that due to the weather during the long interim, the form for the chain wall had warped. The defendant came to his residence with a crew in response, and they changed some of the boards in reworking the form. He confirmed that this, as well as the other work, was performed prior to mid-July. Wells identified the text messages introduced by the State, including many texts by Wells to the defendant in an attempt to determine if materials had been purchased.
Lieutenant Michelle Blades of the Terrebonne Parish Sheriff's Office investigated two of the defendant's residential contractor fraud cases (docket nos. 711282 and 712011), made contact with the victims, *61 and took pertinent photographs. She interviewed the defendant on October 12, 2015, after he was arrested for the charge of home improvement fraud. The defendant was advised of his Miranda rights and signed a waiver of rights form and provided a recorded interview. As to the instant case, during the interview the defendant confirmed that he entered into the contract with Wells. He further confirmed that Wells paid him $8,000.00 as a down payment, and that he cashed the check. He claimed that he initially had to wait for materials to arrive before he could start on Wells's fence due to one of his workers absconding with some of the money Wells had paid for the materials. The defendant further stated that he informed Wells of his dilemma and asked for more time, adding that he was short-staffed. The defendant indicated he paid for metal and ordered vinyl. Blades asked, "Okay so why if you ordered the items why hasn't the fence been installed[?]" The defendant responded, "I ordered I (inaudible) the fence wasn't up because I give Ernest[7 ] the money." As to the last time he spoke to Wells regarding the fence, the defendant responded, "Uh I think I left him a text message a ... couple of months now though."
At trial, the defendant testified that materials that Coleman ordered never came in, adding, "I learned that Mr. Ernest Coleman was deceiving me the whole entire time." He confirmed that he never filed any complaints against Coleman. When asked for the primary reason as to why the work under the contract stopped, the defendant testified, "The primary reason was being short of the money and basically the weather condition and being shorthanded as well." The defendant confirmed that the contract price was reduced to $9,000.00, that he started the work, but that he did not complete the job.
Based on the verdict, the jury rejected the defendant's hypothesis of innocence that he did not complete the work because he was delayed in obtaining materials and/or due to circumstances out of his control. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson , 459 So.2d 31, 38 (La. App. 1st Cir. 1984). Unless there is internal contradiction or irreconcilable conflict with the physical evidence, the testimony of a single witness, if believed by the fact finder, is sufficient to support a factual conclusion. See Higgins , 898 So.2d at 1226. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. State v. Taylor , 97-2261 (La. App. 1st Cir. 9/25/98), 721 So.2d 929, 932.
We reject the defendant's argument that the statute requires no work ever being performed under the contract. The interpretation of any statutory provision starts with the language of the statute itself. When the provision is clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purpose indicated by a fair interpretation of the language used. State v. Oliphant , 2012-1176 (La. 3/19/13), 113 So.3d 165, 168 (citations omitted).
*62 La. R.S. 14:202.1 provides a forty-five day duration in regard to the lack of the performance of any work, as opposed to requiring a total absence of work under the full term of the contractual obligation.
The State presented evidence to show that the defendant received a down payment of $8,000.00 and did not perform any work under the contract after mid-July of 2015. As noted, the defendant was arrested for the charge of home improvement fraud in October of 2015. We find that the jury could have reasonably concluded that the defendant knowingly failed to perform any work during a time period that well exceeded forty-five days after receiving payment in this case. The $8,000.00 payment constituted over eighty-eight percent of the reduced contract price of $9,000.00. The State presented evidence to show that while the defendant agreed to install 215 feet of fencing around Well's residence, he only installed a twelve-foot puppy fence around the patio. As to the main fence, the State presented evidence to show that the defendant only began forming the footer or concrete chain wall. In reviewing the evidence, we cannot say that the jury's determination was irrational under the facts and circumstances presented to them. See Ordodi , 946 So.2d at 662.
An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. State v. Calloway , 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). A court of appeal impinges on a fact finder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law in accepting a hypothesis of innocence that was not unreasonably rejected by the fact finder. See State v. Mire , 2014-2295 (La. 1/27/16), --- So.3d ----, ----, 2016 WL 314814 (per curiam); State v. Mussall , 523 So.2d 1305, 1310 (La. 1988). Based on our careful review of the record, we are convinced that any rational trier of fact, viewing the evidence presented at trial in the light most favorable to the State, could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of the offense of residential contractor fraud when the misappropriation or intentional taking amounts to a value of one thousand five hundred dollars or more. Accordingly, assignment of error number five lacks merit.
CHALLENGE FOR CAUSE
In assignment of error number one, the defendant argues that the trial court erred in denying his challenge for cause to strike prospective juror Shanida Kanach. The defendant contends that Kanach stated on the record that she has a basic understanding of the English language. The defendant argues that her ability to understand the written English language is deficient, noting that the record indicates that she needed assistance with certain words while attempting to read the newspaper. Further noting that each case involves written contracts and/or text messages, and strict interpretation of jury instructions, the defendant argues that the ability to read is not equivalent to the ability to write or speak English in basic terms. He notes that he was required to use a peremptory challenge to strike Kanach.
An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. La. Const. art. I, § 17 (A). The purpose of voir dire examination is to determine prospective *63 jurors' qualifications by testing their competency and impartiality and discovering bases for intelligent exercise of cause and peremptory challenges. State v. Mills , 2013-0573 (La. App. 1st Cir. 8/27/14), 153 So.3d 481, 486, writs denied, 2014-2027 (La. 5/22/15), 170 So.3d 982 & 2014-2269 (La. 9/18/15), 178 So.3d 139. An erroneous ruling depriving an accused of a peremptory challenge violates his substantial rights and constitutes reversible error; therefore, prejudice is presumed when a defendant's challenge for cause is erroneously denied and the defendant exhausts all of his peremptory challenges. State v. Taylor , 2003-1834 (La. 5/25/04), 875 So.2d 58, 62. In this case, the defendant exhausted all of his peremptory challenges.
Louisiana Code of Criminal Procedure article 401 states, in pertinent part, that jurors must be able to read, write, and speak English. The question of a juror's qualifications is addressed to the sound discretion of the trial judge. Mills , 153 So.3d at 488 ; State v. Lewis , 2012-0803 (La. App. 4th Cir. 9/25/13), 125 So.3d 1252, 1263, writ denied, 2013-2537 (La. 6/20/14), 141 So.3d 279. A trial court is afforded broad discretion in determining whether to strike a juror for cause because of the trial court's ability to form a first-person impression of prospective jurors during voir dire. State v. Brown , 2005-1676 (La. App. 1st Cir. 5/5/06), 935 So.2d 211, 214, writ denied, 2006-1586 (La. 1/8/07), 948 So.2d 121. Therefore, the trial court's rulings will not be disturbed unless a review of the voir dire as a whole indicates an abuse of that discretion. State v. Lee , 637 So.2d 102, 108 (La. 1994).
When questioned regarding her ability to read, write, and speak English, Shanida Kanach stated, "I may not understand the word or the question, you know." When asked to identify her primary language, Kanach stated, "Thailand," noting that she had been living in the United States since 1979. She stated that she worked as a ceramics teacher and operated her own ceramic shop. When asked if she was able to read the local newspaper, she stated, "Somewhat. Not -- sometimes I have to ask somebody what does that mean, what does that mean." She confirmed that she was able to write in the English language, though she noted that she had some difficulty with proper spelling. She confirmed that she was able to understand what the trial judge was saying to her.
In challenging Kanach for cause, the defense counsel claimed that due to her "language barrier" she would not be able to follow the intricacies of the trial. The State noted that Kanach had no difficulty participating in the back and forth colloquy with the trial judge. The trial court agreed, noting that it would provide a special instruction to her in particular and everyone, to raise their hand if questions or answers were stated too fast. The defense counsel responded, "That's fine." The defense counsel further thanked the court for the decision to provide the special instruction.
We note that a defendant may not assign as error on appeal a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of the ruling. La. Code Crim. P. art. 800(A) ; Mills , 153 So.3d at 486. In this case, the defense counsel acquiesced and thanked the court as to its decision to give a special instruction as opposed to sustaining the challenge for cause. Moreover, the trial court conducted a colloquy with the prospective juror and was satisfied with her ability to understand the English language. Kanach lived in the United States since 1979, worked in the United States, and operated her own business. After a thorough review, we find no abuse of discretion in the trial court's ruling that denied *64 the for-cause challenge of Kanach. Assignment of error number one lacks merit.
STATEMENTS BY THE PROSECUTION AT TRIAL
In assignment of error number three, the defendant contends that the prosecutor used a text message that was admittedly taken out of context, in an attempt to convey the victims' feelings. Noting that the prosecutor specifically quoted a Bible verse,[8] the defendant argues that the comment was "out-of-place" and had nothing to do with the conclusions that could be drawn from the evidence, The defendant contends that the statement was outside of the scope of proper closing argument. The defendant argues that the statement could have influenced the jury in an inappropriate manner to make a decision based on the State's implication that the verse was a reflection of the victims' feelings and the use of the verse to refer to the defendant as a thief. He concludes that the Biblical quote improperly influenced the jury, likely could have affected the verdict, and that he was denied his due process right to a fair and impartial trial due to the trial court's failure to provide a curative instruction.
Closing arguments in criminal cases should be restricted to the evidence admitted, to the lack of evidence, to conclusions of fact that may be drawn therefrom, and to the law applicable to the case. Further, the State's rebuttal shall be confined to answering the argument of the defendant. See La. Code Crim. P. art. 774. Prosecutors are allowed wide latitude in choosing closing argument tactics. State v. Draughn , 2005-1825 (La. 1/17/07), 950 So.2d 583, 614, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). However, even if the prosecutor exceeds these bounds, the court will not reverse a conviction if not "thoroughly convinced" that the argument influenced the jury and contributed to the verdict. See State v. Martin , 93-0285 (La. 10/17/94), 645 So.2d 190, 200, cert. denied, 515 U.S. 1105, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995) ; State v. Vansant , 2014-1705 (La. App. 1st Cir. 4/24/15), 170 So.3d 1059, 1063 ; State v. Prestridge , 399 So.2d 564, 580 (La. 1981) ; Mills , 153 So.3d at 496. The trial judge has broad discretion in controlling the scope of closing arguments.
We note that the defendant did not object to the closing arguments. "A defendant's failure to object contemporaneously to improper argument by the prosecutor waives any claim on appeal based on the argument." State v. Johnson , 2000-0680 (La. App. 1st Cir. 12/22/00), 775 So.2d 670, 680, writ denied, 2002-1368 (La. 5/30/03), 845 So.2d 1066 ; See also La. Code Crim. P. art. 841. Irregularities or errors cannot be availed of on appeal if no objection is made at the time of the occurrence. State v. Walker , 94-0587 (La. App. 1st Cir. 4/7/95), 654 So.2d 451, 453, writs denied, 95-1124 & 95-1125 (La. 9/22/95), 660 So.2d 470. "The grounds for objection must be sufficiently brought to the court's attention to allow it the opportunity to make the proper ruling and prevent or cure any error." State v. Trahan , 93-1116 (La. App. 1st Cir. 5/20/94), 637 So.2d 694, 704. Thus, *65 we find no merit in this assignment of error.
THE CONSTITUTIONALITY AND LEGALITY OF THE SENTENCING
In assignments of error numbers four, six, and seven, the defendant argues that the trial court's imposition of five years imprisonment at hard labor on each count to be served consecutively is grossly disproportionate, excessive, and cruel and unusual. He notes that he was ordered to pay restitution of $2,700.00 to victim Don Hebert, $4,000.00 to victim Billy Burrow, Jr., and $8,000.00 to Wells, and to serve two years of imprisonment at hard labor in each case in default of paying restitution (totaling $14,700.00) within six months. The defendant argues that there were no aggravating factors and cites several other cases, contending that a review of other cases across the State shows that his sentences are excessive. In assignment of error number seven, the defendant argues that the trial court erred in denying his motion to reconsider sentence. He adds the argument that a sentence should be considered excessive if it is in excess of the maximum sentence that could be imposed upon a defendant in a more egregious case. In support of this argument, he contends that the legislature intended to formulate the punishment for a violation of La. R.S. 14:202.1 by taking the amount of fraud into consideration.[9] Thus, he argues that the sentences imposed are in conflict with the legislative intent in formulating respective punishments for violations of the statute.[10]
Article I, Section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one's sense of justice. A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Hurst , 99-2868 (La. App. 1st Cir. 10/3/00), 797 So.2d 75, 83, writ denied, 2000-3053 (La. 10/5/01), 798 So.2d 962.
The Louisiana Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. La. Code Crim. P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the criteria. State v. Herrin , 562 So.2d 1, 11 (La. App. 1st Cir.), writ denied, 565 So.2d 942 (La. 1990). In light of the criteria expressed by Article 894.1, a review *66 for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Watkins , 532 So.2d 1182, 1186 (La. App. 1st Cir. 1988).
Upon a conviction of residential contractor fraud when the misappropriation or intentional taking amounts to a value of one thousand five hundred dollars or more, the offender shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both. La. R.S. 14:202.1(C)(3) (prior to amendment by 2017 La. Acts No. 281, § 1). We note that the defendant was sentenced to mid-range sentences of five years imprisonment at hard labor in each case. The trial court considered the facts and circumstances of the cases and the victims' testimony prior to the imposition of the sentences. While the defendant challenges the trial court's order that the sentences in the cases be served consecutively, we note that the cases all involve different victims and different sets of circumstances and time periods. The offenses were not based on the same act or transaction and did not constitute parts of a common scheme or plan.[11] We also reject the defendant's argument that the trial court erred in failing to consider sentences imposed in similar cases. There is little value in making sentencing comparisons. It is well settled that sentences must be individualized to the particular offender and to the particular offense committed. State v. Batiste , 594 So.2d 1, 3 (La. App. 1st Cir. 1991). Based on our thorough review of the record, we find that the sentence was not grossly disproportionate to the severity of the offense, and thus was not unconstitutionally excessive. Accordingly, these assignments of error are without merit.
CONVICTION AND SENTENCE AFFIRMED.
Penzato, J., concurs

The defendant has two additional pending appeals for cases that were combined with the instant case for trial, also involving violations of La. R.S. 14:202.1. Specifically, in 2018-KA-0153 (district court docket number 711282), the defendant appeals another conviction of residential contractor fraud, and in 2018-KA-0152 (district court docket number 689846), the defendant appeals a conviction of home improvement fraud, denoted consistently with the version of the statute in effect at the time of that offense (prior to amendment by 2014 La. Acts No. 62, § 1).

The bill of information erroneously states that the defendant violated La. R.S. 14:202.1(F), which is not included in the statute that was in effect at the time of the offense. However, the defendant did not file a motion to quash the bill of information. See La. C.Cr.P. art. 532(A)(1).

Miranda v. Arizona , 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

The second assignment of error is specific to the defendant's appeal in 2018 KA 0152 State v. Tyrone Folse and will not be considered in this appeal.

The defendant confuses the victims in his brief under assignment of error number five, listing Larry Wells as the victim in two cases. The correct names in accordance with the record are provided herein.

The defendant is not raising the applicability of the statute as a separate issue. He concedes that the issue was not preserved for appeal, noting that he did not raise such a claim below or file a motion to quash the bill of information. See La. Code Crim. P. art. 841. Moreover, we note that as a general rule, a motion to quash does not serve as a vehicle for asserting defenses to the merits of a charge in a case that involves disputed facts. See State v. Daquin , 2015-0160 (La. App. 1st Cir. 11/9/15), 184 So.3d 724, 726-27.

The defendant identified Ernest as his employee. However, there is a discrepancy in the record as to the employee's last name. While the transcript of the pretrial interview indicates that the defendant referred to the employee as Ernest Copeland at that time, according to the trial transcript, the defendant referred to the employee as Ernest Coleman during the trial.

The defendant specifically references the following statement by the prosecutor during closing arguments at trial: "This, I think, is a good summary of the feelings of the victims in this case. It was on one of the text messages. A text message from one of the victims to the defendant, 'Ephesians 4:28, let the thief no longer steal, but yet let him labor, doing honest work with his own hands so that he may have something to share with everyone in need.' "

The defendant specifically states the following on page 33 of his brief in footnote 4:
Hypothetically, a person could commit Residential Contractor Fraud in an amount clearly in excess of the amount in the instant case ($14,700.00) and receive a lesser sentence. Theoretically, if there is one victim who suffers from Residential Contractor Fraud greater than the total amount claimed by the State as defrauded here can only get a maximum sentence of ten (10) years, whereas your Appellant received a total of fifteen (15) years - five (5) years for each charge [to run] consecutively.

The defendant is not challenging the legality or constitutionality of the statute and does not otherwise challenge the legality of his sentences.

The law concerning consecutive sentences, La. Code Crim. P. art. 883, in pertinent part, provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently....