L MIRIAM G. WALTZER, Judge.
The state appeals an order granting George Marrero’s motion to quash the bill of information for distribution of cocaine.

*212
STATEMENT OF CASE

Marrero was charged by bill of information with distribution of cocaine on 12 March 1999. Testimony was taken on his motions to suppress the evidence and for preliminary hearing on 1 June 1999 and 26 May 2000. On 10 May 2001, Marrero made an oral motion to quash the bill of information, and the court set the matter for a hearing on 29 May 2001. Subsequently, he filed a written motion styled Motion to Quash and to Reopen Motion to Suppress Evidence. Marrero alleged that his arrest was in violation of the 18 U.S.C. § 1385, the Posse Comitatus Act.
The hearing was conducted as scheduled and after hearing arguments from the state and the defense the court granted the motion to quash and withheld its ruling on whether the motion to suppress should be granted. The state appealed the order quashing the bill of information.
1 STATEMENT OF FACT
Testimony from the two motion hearings reflects that on 11 February 1999, members of the New Orleans Police Department Vice Squad in conjunction with the Naval Criminal Investigative Unit (NCIU) were conducting an undercover buy/bust operation in areas surrounding the French Quarter of New Orleans. Detective W.A. Theodore testified that during the Mardi Gras season there are normally a lot of military personnel in and, around the French Quarter and that the purpose of the operation was to deter drug related activity with respect to naval personnel and drug dealers.
Apparently, the Navy supplied the two vice squad detectives with the naval dress uniforms. Additionally, Detective Theodore testified that a member of NCIU participated in the arrest, although the detective could not recall his name. The police report from the matter, which is contained in the record, simply states that “[t]he Vice Section was assisted by NCIS personnel.” There is no further mention of any involvement by military personnel in the report.
Two detectives from the vice squad posed as naval personnel, clad in dress uniforms. A third detective posed as a cab driver. While traveling on St. Philip Street in a marked taxi cab, the detectives were flagged down by Marrero and were successful in completing a narcotics transaction for two bags of cocaine. Marrero was arrested by a takedown team shortly after the transaction and handcuffed by Detective Lohman. Lieutenant Timothy Bayard recovered a marked twenty-dollar bill used to purchase some of the drugs. The three detectives observed Marrero’s arrest and positively identified him. The evidence was maintained by Detective Daniel Jewel and deposited at central evidence and property.
| ¡ASSIGNMENT OF ERROR
The state contends that the trial court erred in quashing the bill of information on the basis of a violation of the Posse Comi-tatus Act. Passed shortly after the end of the Reconstruction Era, the Act was designed to limit military involvement in civilian law enforcement. It reads as follows:
Whoever, except in case and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus[1] or other *213 wise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.
18 U.S.C. § 1385
As an initial matter, it appears that a motion to quash was the proper procedural vehicle for Marrero to raise the issue. A motion to quash is a mechanism by which a defendant raises pretrial pleas or defenses which do not go to the merits of the criminal charge. State v. Rembert, 312 So.2d 282 (La.1975). The motion to quash concerns a defense which, if successful, requires dismissal of the indictment or information regardless of the issue of the defendant’s guilt or innocence. State v. Reaves, 376 So.2d 136 (La.1979). “The issue of whether or not the prosecution of a defendant should be barred as a result of government misconduct or overreaching is, therefore, a question of law for the trial. The trial judge must decide if governmental participation is so outrageous or fundamentally unfair that it deprives a defendant of due process.... ” State v. Caldwell, 616 So.2d 713, 721 (La.App. 3 Cir.1993).
In U.S. v. Bacon, 851 F.2d 1312 (11th Cir.1988), an active duty army investigator assumed an undercover role in working jointly with civilian law enforcement in a drug investigation. The investigator was able to purchase $1800 worth of cocaine from the defendant on one occasion and was able to complete several other purchases for lesser amounts. The investigation’s focus was to ferret out a source of some of the cocaine being supplied to both army personnel at a nearby base as well as civilians in the area. The army investigator was accompanied by a special agent of the Georgia Bureau of Investigation when he completed the $1800 transaction. Army funds were used for some of the “buy” money. All evidence gathered by the investigator was turned over to the civilian authorities for use in the prosecution of the defendant.
The court held that the Posse Comitatus Act had not been violated saying, “[i]n this case the limited military participation was nothing more than a case of assistance to civilian law enforcement efforts by military personnel and resources.” Bacon, 851 F.2d at 1313, and further that because the military participation in the investigation “did not pervade the activities of civilian officials, and did not subject the citizenry to the regulatory exercise of military power,” it did not violate the Act. Id. See also U.S. v. Hartley, 678 F.2d 961, 978 (11th Cir.1982) (Before military involvement is in violation of the Act, it must amount to “military permeation of civil law enforcement.”)
In Hayes v. Hawes, 921 F.2d 100, (7th Cir.1990), the court observed that a majority of courts have held that “where military involvement is limited and where there is an independent military purpose of preventing illicit drug transactions to support the military involvement, the coordination of military police efforts with those of civilian law enforcement does not violate” the Act. Id. at 103, (citations Omitted). Furthermore, the court noted “that a majority of the courts which have addressed the issue presented in this case have steadfastly refused to apply the exclusionary rule to evidence seized in violation of the statute and its related regulations, absent widespread and repeated violations- See Bacon, 851 F.2d at 1313; Hartley, 796 F.2d at 115; Roberts, 779 F.2d at 568; United States v. Wolffs, 594 F.2d 77, 85 (5th Cir.1979); Walden, 490 F.2d at 377.” Id. at 104.
In the present circumstance, it appears direct military participation was lim *214 ited to supplying the dress uniforms used by the undercover detectives, and the association of one or more personnel with the investigation. Military investigators did not assume an undercover role; nor does it appear they searched Marrero or seized any evidence. Furthermore, there was an independent military purpose of deterring drug related activity with naval personnel. In light of the foregoing, there is an insufficient basis to justify quashing the bill of information.[2]

CONCLUSION

We reverse the trial court’s judgment granting the motion to quash the bill of information.
REVERSED.

. Literally translated "posse comitatus,” from Latin, is the "power of the county” and is defined at common law to refer to all those over the age of 15 upon whom a sheriff could call for assistance in preventing any type of civil disorder. H.R.Rep. No. 97-71, Part II, 97th Cong., 1st Sess. 4 (1981), reprinted in 1981 U.S.Code Cong. & Ad. News 1781, 1786 *213 (citing 1 W. Blackstone, Commentaries 343-44).

. Furthermore, if Marrero re-urges the issue by raising the motion to suppress, the record does not contain evidence of "sufficient widespread violations," Hayes v. Hawes, 921 F.2d at 104, warranting application of the exclusionary rule to the evidence seized.