# United States Court of Appeals
## For the First Circuit

No. 22-1670

ANGEL A. PERALES-MUÑOZ; HELIRIS ROMÁN-RODRÍGUEZ; CONJUGAL
PARTNERSHIP PERALES-ROMÁN,

Plaintiffs, Appellants,

v.

UNITED STATES,

Defendant, Appellee,

PHILIP S. CRANE; DOCUMENT AND PACKAGING BROKERS, INC.,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]
[Hon. Giselle López-Soler, U.S. Magistrate Judge]

Before

Barron, Chief Judge,
Montecalvo and Aframe, Circuit Judges.

Guillermo Ramos Luiña, with whom Despacho Jurídico Ramos
Luiña, LLC, was on brief, for appellants.

Steven A. Myers, with whom Brian M. Boynton, Principal Deputy
Assistant Attorney General, W. Stephen Muldrow, United States
Attorney, and Mark B. Stern were on brief, for appellee.

September 2, 2025

**MONTECALVO, <u>Circuit Judge</u>.**   Angel A. Perales-Muñoz ("Perales") was contracted by Document and Packaging Brokers, Inc. ("Docupak"), a defense contractor, that helped the United States National Guard Bureau administer a program to find and sign recruits up for the United States Army National Guard.  That program caught the attention of the Army's internal law enforcement agency due to concerns over possible fraudulent conduct in connection with the program.  The investigation led to the filing of a series of federal indictments against Perales, and his subsequent arrest.  However, two years later, while the charges were still pending, the government moved to dismiss the indictments against Perales.  The criminal charges were subsequently dismissed with prejudice.

Perales responded by filing suit in the United States District Court for the District of Puerto Rico, asserting claims under the Federal Tort Claims Act ("FTCA"), ch. 753, 60 Stat. 842 (1946) (codified as amended in scattered sections of 28 U.S.C.), based on alleged negligent investigation and seeking damages for the pain and anguish that the investigation and arrest inflicted on him and his family.  On a motion to dismiss, however, the district court held that the discretionary function exception to the FTCA's waiver of sovereign immunity applied, and thus dismissed Perales's claims for lack of subject matter jurisdiction.

Perales calls on us now to reverse that finding. He contends that the discretionary function exception does not apply because the Army's investigation violated federal laws and regulations and that the district court erred in holding to the contrary. But for reasons that follow, we affirm the district court's determination that the federal courts lack jurisdiction to resolve Perales's claims.

## I.    Background[1]

This case involves a recruiting program that was run by the National Guard Bureau. The National Guard Bureau is an administrative agency inside the Department of Defense. 10 U.S.C. § 10501(a). It oversees, among other things, the "unit structure, strength authorizations, and other resources to the Army National Guard of the United States." Id. § 10503(1). The Army National Guard is a reserve component of the United States Army. Id. § 10105 (setting forth composition of the Army National Guard). Its purpose as a reserve component is "to provide trained units and qualified persons available for active duty in the armed

---

[1] We draw the facts from Perales's complaint, documents fairly incorporated into it, and information subject to judicial notice. See Gagliardi v. Sullivan, 513 F.3d 301, 303, 306 (1st Cir. 2008). And since we are evaluating a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), we also "may consider whatever evidence has been submitted, such as . . . depositions and exhibits." Carroll v. United States, 661 F.3d 87, 94 (1st Cir. 2011) (alteration in original) (quoting Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996)).

forces, in time of war or national emergency, and at such other times as the national security may require, to fill the needs of the armed forces whenever more units and persons are needed than are in the regular components." Id. § 10102.

In 2005, the National Guard began a program called the National Guard Recruiting Assistance Program (the "Recruiting Program"). As the name suggests, the Recruiting Program sought to help recruit soldiers during then-ongoing military engagements in the Middle East and Afghanistan. The Recruiting Program offered bonuses and other financial incentives to recruiter assistants who successfully recruited civilians to join the Army National Guard. To help administer the Recruiting Program, the National Guard Bureau contracted with Docupak, which under the contract was responsible for recruiting, hiring, and paying recruiter assistants, as well as administering the bonus incentives to recruiter assistants for signing new recruits.

Perales was one of the recruiter assistants hired as an independent contractor by Docupak. He worked as a recruiter assistant from 2006 to 2012, a period that coincided with his time serving in the Puerto Rico Army National Guard from 1997 to 2013.

Around 2007, the Army Criminal Investigation Division ("CID"), which is the Army's primary federal law enforcement agency, began receiving alerts from Docupak about potential fraud related to the Recruiting Program. The CID soon thereafter

- 5 -

launched a full investigation into possible fraud in the Recruiting Program.

Perales implies that he was one of the subjects of the CID's investigation and that the CID's investigation caused a subsequent federal civilian criminal investigation into him. In 2015, Perales was arrested and named as one of two defendants in three largely identical federal indictments, each charging him with multiple counts of conspiracy to defraud the United States, conspiracy to commit wire fraud, wire fraud, and aggravated identity theft. The essential scheme, according to the indictments, was that Perales and his alleged co-conspirators would submit fraudulent bonus reimbursement claims to Docupak representing that they recruited soldiers that they did not in fact recruit.

Two years later, the government moved to dismiss the charges against Perales, stating that he

> did violate the rules and regulations of [the Recruiting Program] with respect to how [personal identifying information] of potential recruits was to be obtained, by whom, and how it was to be used. However, after due consideration of the facts and circumstances of this case, the United States moves to dismiss the Indictment in the interests of justice.

The court then dismissed the charges against Perales with prejudice.

In 2019, Perales and his wife, Heliris Román-Rodríguez ("Román"),[2] filed largely identical but separate administrative claims for damages through the Army's internal claims process. Their claims alleged that the criminal charges against Perales were prompted by "a faulty and negligent investigation" into the Recruiting Program, which caused both Perales and Román "severe mental pain and anguish." The Army issued a letter of denial regarding these claims in October 2019.

In 2020, Perales, Román, and the Perales-Román Conjugal Partnership (collectively, "Perales") filed a complaint for damages against the United States in federal district court.[3] We recount the portions of the case which are relevant to the current appeal.

Perales's complaint alleged that his indictment and arrest were the result of CID agents' investigative negligence and reckless disregard for exculpatory evidence which demonstrated

---

[2] Román's sole connection to this case is through her relationship to Perales. She was not charged in the indictment.

[3] At first, Perales also asserted claims against Docupak and Docupak's Chief Executive Officer, Philip S. Crane. Perales later moved to voluntarily dismiss his claims as asserted against Docupak and Crane. While the district court never resolved that specific motion, the court ultimately dismissed the entire case with prejudice, rendering that pending motion moot. Now on appeal, Perales challenges the district court's judgment only with respect to his claims as asserted against the United States.

that the Recruiting Program suffered from systemic deficiencies and Docupak deserved much of the blame for the fraud allegations.

The government moved to dismiss, arguing that the court lacked subject matter jurisdiction over the case under Federal Rule of Civil Procedure 12(b)(1). In doing so, it relied on the so-called "discretionary function exception," which provides that the FTCA's waiver of sovereign immunity does not extend to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." 28 U.S.C. § 2680(a); see Reyes-Colón v. United States, 974 F.3d 56, 58 (1st Cir. 2020). In other words, the exception bars claims against the United States based on a federal employee's performance of some function or duty that potentially requires the exercise of policy discretion. The government therefore argued that even though Perales brought his claim under the FTCA -- under which the United States has waived its sovereign immunity with respect to certain injuries caused by government employees acting in the scope of their official employment, see 28 U.S.C. § 1346(b)(1) -- sovereign immunity still bars his suit because the harm was the product of a discretionary function. Specifically, the government argued that the CID's investigation into Perales was an exercise of a discretionary function under § 2680(a).

In opposition, Perales argued that the discretionary function exception was inapplicable because it does not cover acts,

like the CID's investigation, taken in the absence of legal authority. In particular, he contended that the CID's investigative authority was defined and "delimit[ed]" by Army Regulation 195-2 ("AR 195-2"), which is an Army regulation that establishes Army policies on criminal investigations. And, in his view, the CID's investigation exceeded the authority granted to it by AR 195-2. As such, Perales asserted that the discretionary function exception cannot apply to the CID's investigation into him.

The district court ordered limited jurisdictional discovery on whether the discretionary function exception applied. The magistrate judge assigned to the case then issued a Report and Recommendation ("the Report") which examined whether the CID's investigation in fact violated applicable laws or regulations. Specifically, the Report analyzed two different legal provisions: AR 195-2 and the Posse Comitatus Act, 18 U.S.C. § 1385.[4] The Report concluded that the CID's investigation violated neither the regulation nor the statute, was a valid exercise of policy-rooted

---

[4] Perales's argument regarding the Posse Comitatus Act was raised for the first time during the jurisdictional discovery phase. As part of the Report's analysis of the Posse Comitatus Act, the magistrate judge also examined Department of Defense Directive 5525.5, a regulation promulgated pursuant to the Department's authority under 10 U.S.C. § 275 to issue regulations to ensure that no "direct participation by a member of the Army, Navy, Air Force, or Marine Corps in a search, seizure, arrest, or other similar activity" is permitted unless "otherwise authorized by law." 10 U.S.C. § 275.

discretion, and was therefore protected by the discretionary function exception. Accordingly, the Report recommended dismissing the complaint for lack of subject matter jurisdiction.

Perales filed objections to the Report, including to its conclusion that the CID's investigation did not violate the Posse Comitatus Act. He did not, however, contest the Report's conclusion that the investigation did not violate AR 195-2.

The district court adopted the Report in full, dismissed the complaint, and entered judgment for the defendants.

This timely appeal followed.

## II.  Standard of Review

We review the district court's dismissal for lack of subject matter jurisdiction de novo. Town of Barnstable v. O'Connor, 786 F.3d 130, 138 (1st Cir. 2015). In doing so, we take all well-pleaded allegations as true and give Perales the benefit of all reasonable inferences. Hajdusek v. United States, 895 F.3d 146, 148 (1st Cir. 2018). However, the burden of demonstrating the existence of federal jurisdiction ultimately lies with Perales, as he is the party seeking to invoke federal jurisdiction. Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

## III. Discussion

### A.  The FTCA and the Discretionary Function Exception

We begin with a brief overview of the FTCA and the discretionary function exception.

"As a sovereign, the United States is immune from suit unless it consents to being sued." Reyes-Colón, 974 F.3d at 58. Where the United States has not consented to suit, "[f]ederal courts lack jurisdiction over tort actions against the United States." Limone v. United States, 579 F.3d 79, 88 (1st Cir. 2009). Through the FTCA, however, the government has consented to suit in cases involving alleged injuries caused by government employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1).

As previously noted, even where the United States has consented to suit, there are exceptions that nonetheless bar suit against it. One such exception is the discretionary function exception, which provides that the government does not consent to suit on:

> [a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

Id. § 2680(a). In other words, the discretionary function exception bars any tort claim against the United States where a federal government employee, in relation to a tortious act, exercises some function or duty that potentially requires exercising some amount of policy discretion. See Reyes-Colón, 974 F.3d at 58-59.

- 11 -

This bar, however, does not apply when the "harm-producing conduct itself is [not] discretionary" because a federal "'statute, regulation, or policy' . . . dictates 'a course of action'" that the employee must follow. Mahon v. United States, 742 F.3d 11, 14 (1st Cir. 2014) (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)). The discretionary function exception accordingly does not "immunize the government from liability for actions proscribed by federal statute or regulation." Limone, 579 F.3d at 101; see also Red Lake Band of Chippewa Indians v. United States, 800 F.2d 1187, 1196 (D.C. Cir. 1986) ("A government official has no discretion to violate the binding laws, regulations, or policies that define the extent of his official powers.").

Perales relies on this principle to argue that the FTCA's discretionary function exception does not apply to the conduct challenged here because the CID investigation violated binding federal laws and regulations, namely the Posse Comitatus Act and AR 195-2.[5] The government answers that the CID's investigation violated neither. For the following reasons, we agree with the

---

[5] The Report also concluded that the Perales-Román Conjugal Partnership failed to exhaust its administrative remedies as required by the FTCA, 28 U.S.C. § 2675(a). Perales renews his argument regarding administrative exhaustion on appeal, but we need not address it because we agree with the district court's conclusion that the federal courts lack jurisdiction to hear any portion of this case.

district court that Perales has failed to meet his burden to establish the existence of federal jurisdiction. We thus affirm the district court's dismissal of the case on the ground that the federal courts lack jurisdiction to resolve any portion of this case.

## B. Posse Comitatus Act

We begin with the first law that Perales argues that the United States violated: the Posse Comitatus Act.

The Posse Comitatus Act, first enacted by Congress in 1878, "limit[s] the use of federal troops for domestic law enforcement purposes." Tirado-Acosta v. P.R. Nat'l Guard, 118 F.3d 852, 853 (1st Cir. 1997); see Act of June 18, 1878, ch. 263, 20 Stat. 152 (1878) (current version at 18 U.S.C. § 1385). The Act is short, in full providing that:

> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army, the Navy, the Marine Corps, the Air Force, or the Space Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years, or both.

18 U.S.C. § 1385.

Insofar as Perales argues that the CID's investigative conduct that did not involve civilian law enforcement violated the Act, we disagree. Perales's brief, we think, can be fairly read to make this argument by suggesting that his case is unlike those

in which the CID conducts an investigation "in conjunction with a civilian law enforcement agency." But his complaint, as the government notes, lacks any factual allegations that the CID, by itself, carried out any civilian law enforcement functions such as arresting Perales, executing search warrants, interviewing witnesses, or engaging in any other particular investigative steps which might potentially amount to military "execut[ion of] the laws" in violation of the Posse Comitatus Act. 18 U.S.C. § 1385. Absent such allegations, Perales's complaint cannot be construed to allege the CID's investigation violated the Posse Comitatus Act.

And to the extent that Perales argues that the CID caused the criminal charges against him by alerting federal law enforcement that Perales might be involved in possible criminal fraud related to the Recruiting Program, as the allegations in his complaint suggest, we still discern no violation of the Posse Comitatus Act. Even supposing that the CID's act of alerting federal prosecutors about potential crimes could be construed as using the Army to execute the laws, Perales fails to explain why CID's conduct was not, as the district court found that it was, supported by an "independent military purpose,"[6] namely,

---

[6] The source of the "independent military purpose" exception to the Posse Comitatus Act is a Department of Defense regulation. See United States v. Chon, 210 F.3d 990, 994 (9th Cir. 2000)

replenishing the ranks of the Army National Guard and safeguarding Army funds for recruitment, and accordingly, not proscribed by the Posse Comitatus Act. See United States v. Dreyer, 767 F.3d 826, 833 (9th Cir. 2014); see also Applewhite v. U.S. Air Force, 995 F.2d 997, 1001 (10th Cir. 1993) ("necessarily no wilful [sic] use of any part of" armed forces "as a posse to execute civilian laws" where there is "independent military purpose" for the military investigation); Hayes v. Hawes, 921 F.2d 100, 103-04 (7th Cir. 1990) (courts have required military participation in civilian law enforcement to be "pervasive" before finding violation of the Posse Comitatus Act); United States v. Bacon, 851 F.2d 1312, 1313 (11th Cir. 1988) ("We hold that assistance by the military in civil investigations, as here, is not a violation of the Posse Comitatus Act in that the military participation in this case did not pervade the activities of civilian officials, and did not subject the citizenry to the regulatory exercise of military power."). Thus, even viewed in the most generous light, Perales's complaint fails to allege that the CID was used to aid the federal prosecution in such a way that could be understood to violate the Posse Comitatus Act.

---

(applying Chevron deference). We do not understand Perales to be making any argument that the regulations setting forth this exception contravene the statute or that no such "independent military purpose" exception may be applied under the Act.

For these reasons, we find no violation of the Posse Comitatus Act. Perales's argument, hinging on the CID's investigation having violated the Act, thus fails.

### C.    Army Regulation 195-2

Separately, Perales argues that the CID acted beyond the scope of its lawful authority by exceeding AR 195-2, which he contends "delimits the CID's [investigative] jurisdiction."

Perales, however, failed to preserve his argument regarding AR 195-2 for appellate review. His objections to the magistrate judge's Report did not address the Report's extensive analysis of AR 195-2 or its conclusion that AR 195-2 in fact authorized the CID's investigation. See M. v. Falmouth Sch. Dep't, 847 F.3d 19, 25 (1st Cir. 2017) ("[O]nly those issues fairly raised by the objections to the magistrate's report are subject to review in the district court and those not preserved by such objection are precluded on appeal." (quoting Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988))). Accordingly, we will not disturb the conclusion below that the CID did not violate AR 195-2.

### D. No Other Asserted Grounds for Jurisdiction

Perales does not advance any other challenge to the Report's conclusion that the discretionary function exception bars his claim. We thus conclude that Perales has failed to meet his burden to show that federal jurisdiction exists here.

## IV.  Conclusion

For the foregoing reasons, the judgment of the district court is **<u>affirmed</u>**.